**N. H. READ**

v.

**B. M. BRITAIN et al.**

No. B–298.

Supreme Court of Texas.

Dec. 13, 1967.

Rehearing Denied Feb. 7, 1968.

E. H. Foster, Lon Moser, Kolander & Templeton, Robert L. Templeton, Amarillo, for petitioner.

Culton, Morgan, Britain & White, L. A. White and Raymond W. Richards, Amarillo, for defendants.

CALVERT, Chief Justice.

The primary problem in this case concerns the proper interpretation of paragraphs (b), (c) and (d) of the royalty provisions of an oil and casinghead gas lease. N. H. Read, the lessor, was plaintiff in the trial court, and B. M. Britain and David Kritser, the lessees, were defendants.

The defendants are producing both oil and casinghead gas from the leased premises. Section 3 of the lease contains the provisions governing payment of royalties. Paragraph (a) of the section provides for the royalty to be paid on oil. There is no dispute between the parties concerning the obligation imposed by that paragraph and no claim by the plaintiff that any royalty due thereunder has not been paid. Paragraphs (b), (c) and (d) provide for the royalty to be paid on casinghead gas. They read as follows:

"(b) Except where casinghead gas is processed or used as provided for in subparagraph (c) below, Lessee agrees and convenants that before any gas containing liquid hydrocarbons recoverable in

commercial quantities, produced on the land, is sold or used, it shall be run through an adequate separator of conventional type, or other equipment at least as efficient, and that all liquid hydrocarbons recoverable from the gas by such means shall be recovered. As a royalty, Lessee shall pay, or cause to be paid, during the term hereof, three-sixteenths (³⁄₁₆) of the value of such liquid hydrocarbons actually recovered, or an equivalent fraction of that amount which accrues to the Lessee, whichever is the greater.

"(c) The Lessee shall pay, or cause to be paid, during the term hereof, as royalty on casinghead gas sold or used for the manufacture of motor fuel, natural gasoline, butane, propane, and/or other liquid hydrocarbon products, or for the manufacture of sulphur and/or any other solid or non-liquid products (hereinafter referred to in this subparagraph as 'products'), whether such be by casinghead gas plant, or fractionating, absorption, or any other process except as set out in subparagraph (b) above (1) three-sixteenths (³⁄₁₆) of thirty-three and one-third per cent (33⅓%) of the value of the aforesaid products of said gas actually recovered at the plant, or (2) three-sixteenths (³⁄₁₆) of the value of the same which accrues to the Lessee, or (3) three-sixteenths (³⁄₁₆) of the total consideration which accrues to the Lessee, whether directly or indirectly, whichever is the greatest.

\*      \*      \*      \*      \*      \*

"(d) In addition to any royalties provided for in paragraphs above the Lessee shall pay, or cause to be paid, during the term hereof, as a royalty on residue gas sold or used for any purpose, except when used as hereinafter provided, three-sixteenths (³⁄₁₆) of the value of such gas sold or used, but in no event shall the royalty be based on an amount less than the gross proceeds of the sale thereof, or the highest price paid for residue gas in the area, or that amount which accrues to the producer or processor, whichever is the greatest, and in no event shall this value be computed at less than seven (7¢) cents per thousand cubic feet."

■ The only gas produced by defendants is casinghead gas. Casinghead gas is gas produced from an oil well simultaneously with the production of oil. In their operation of the lease, defendants installed a separator on the premises to remove oil from the gas stream, and, by written contract, sold all gas to be produced during an ensuing five-year period, from which the oil had been removed by separator, to Dorchester Gas Producing Company at a basic price of ten cents per thousand cubic feet. Dorchester owns and operates a plant, located some ten miles distant from the lease, for extracting various valuable liquid hydrocarbons such as propane and butane from gas. These extracted hydrocarbons are salable and have a market value. The residue of the gas, after extraction of the hydrocarbons, is also salable and has a market value.

Dorchester purchased the defendants' gas with the intention of processing it in its plant to extract the liquid hydrocarbons, and of selling both the extracted hydrocarbons and the residue. This it has done. However, there is no provision in the contract between the defendants and Dorchester which requires Dorchester to process the gas or which prohibits it from reselling it without processing, and no provision therein for payment to the defendants of any part of the proceeds derived by Dorchester from sale of the hydrocarbons or the residue of the gas.

In his petition, Read asked the trial court to construe the lease as imposing an obligation on the defendants to pay royalties under paragraphs (c) and (d), and for judgment for royalties due, but unpaid, under those paragraphs; alternatively, for judgment for any royalties due, but unpaid, under paragraphs (b) and (d); and finally,

for the appointment of a master to determine the amount of unpaid royalties. The defendants answered that their obligation to pay royalties was controlled by paragraphs (b) and (d) and that they had paid all royalties due under those paragraphs.

The defendants filed a motion for summary judgment by which they sought a judgment that the plaintiff take nothing. As a basis for that judgment, they asked the court to declare that they were not obligated to pay royalties under paragraph (c) but only under paragraphs (b) and (d), and that they had paid all royalties due under those paragraphs. The trial court granted the motion to the extent of declaring that defendants were not obligated to pay royalties under paragraph (c), but reserved the matter of the amount of royalties payable under paragraphs (b) and (d) for trial as a fact issue. After trial to a jury of this latter issue, the court rendered judgment, notwithstanding the verdict, that the plaintiff take nothing. The court of civil appeals agreed that defendants were not obligated to pay royalties under paragraph (c), held that the provisions of paragraph (d) were inapplicable, and affirmed the take-nothing judgment. 414 S.W.2d 483. The opinion of the court of civil appeals gives a more detailed statement of the factual background of the controversy which we have simplified to some extent. We affirm the judgment of the court of civil appeals.

In interpreting the royalty provisions of the lease as applied to defendants' operations, the trial court was of the opinion that a sale of the gas after the oil content had been removed by the separator was a sale of "residue gas" as that term is used in paragraph (d), and that the provisions of paragraph (d) obligated the defendants to pay to the plaintiff three-sixteenths (³⁄₁₆) of the gross proceeds of the sale thereof, or of the highest price paid therefor in the area, or of the amount which accrued to the defendants, whichever was the greatest. It was undisputed that defendants had paid to

plaintiff three-sixteenths (³⁄₁₆) of the proceeds of the sale of the gas to Dorchester which was the amount that accrued to defendants; and so, the court submitted a special issue to the jury by which it was directed to find from a preponderance of the evidence "the highest price paid for residue gas in the area on January 1, 1964." The jury's answer was thirteen cents per thousand cubic feet. The defendants filed a motion for judgment notwithstanding the verdict on several grounds, one of which was that there was no evidence to support the jury's answer. As heretofore noted, the trial court granted the motion.

On appeal to the court of civil appeals, the plaintiff urged, as he had in the trial court, that he was entitled to royalty under the provisions of paragraph (c) inasmuch as the gas had been "sold or used for the manufacture of motor fuel, natural gasoline, butane, propane, and/or other liquid hydrocarbon products." He also continued to urge, as he had in the trial court, that in addition to royalty under paragraph (c), he was entitled to royalty on the "residue" gas sold by Dorchester as provided in paragraph (d). It was, and is, the position of plaintiff that paragraph (d) cannot be applicable in determining the royalty payable on gas sold after being run through the separator because gas is "residue gas" only after the extraction or removal of the liquid and solid hydrocarbons as provided in paragraph (c). The court of civil appeals agreed with this latter contention of the plaintiff and to this extent disagreed with the trial court's interpretation of the lease. However, the court of civil appeals held that the gas was not "sold or used" by the defendants "for the manufacture" of hydrocarbon products within the meaning of paragraph (c), and that defendants' obligation to pay royalty was imposed by paragraph (b) at three-sixteenths (³⁄₁₆) of the proceeds of the sale of the gas to Dorchester. Having so held, the court of civil appeals held further that the provision of paragraph (d) for paying royalty on "the highest price paid for residue gas in the

area" never came into play and was immaterial.

■ When we granted writ of error in this case, we were of the tentative opinion that we could authoritatively resolve the disagreement between the court of civil appeals and the trial court as to the applicability of the provisions of paragraph (d) to the defendants' operations in running the casinghead gas through a separator and selling it without limitation on the use or disposition to be made of the gas by the purchaser. From a further study of the record we now conclude that the point of disagreement has not been preserved for review.

While plaintiff opposed the defendants' motion for judgment notwithstanding the jury's verdict and moved for judgment on the verdict in his favor, he did not seek in the court of civil appeals, nor does he seek here, a reversal of the judgment of the trial court and a rendition of judgment in his favor for such an amount as he might be entitled to under the jury's verdict. He seeks only a reversal and a remand for new trial so that he may recover royalties under both paragraph (c) and paragraph (d). He does not complain of the court of civil appeals' holding that the royalty provisions of paragraph (d) applicable to "residue gas" come into play only when casinghead gas is sold or used for the manufacture of liquid and solid hydrocarbons as provided in paragraph (c), and is not in position to do so because that is the interpretation he sought and obtained. Although the defendants still contend that gas from which the oil content has been removed by a separator is also "residue gas" as that term is used in paragraph (d) and thus disagree with the court of civil appeals' holding that the provisions of paragraph (d) are inapplicable to their operation, they do not by cross-point complain of the holding because they have a judgment denying the plaintiff any recovery. We are thus left with no alternative with respect to the point of disagreement except to state that the holding of the court of civil appeals as

to the applicability of paragraph (d) to the defendants' obligations to pay royalties in the future is not to be regarded as authoritative or controlling. The question is left open.

■ We agree with the holding of the court of civil appeals and the trial court that plaintiff is not entitled to recover royalties under paragraph (c). The reasons given by the court of civil appeals for the holding are adequate and sound and need no enlargement.

The judgment of the court of civil appeals is affirmed.