Willett WILSON, III, et al., Appellants,

v.

UNITED TEXAS TRANSMISSION COMPANY, et al., Appellees.

No. 13–89–472–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1990.

William E. Wright, Mac W. Hancock; and Ray Carlton Muirhead, Houston, for appellants.

Gregg C. Laswell, Andrews & Kurth, Houston, for appellees.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This is an action for conversion of gas royalties. Appellants, Willett Wilson, III, Myra Branum Wilson and Dr. E. Shannon Crenshaw sued appellees, United Texas Transmission Company, Inc., and South Gulf Energy, Inc., for recovery of gas royalties. The trial court entered summary judgment favorable to United Texas and South Gulf. By two points of error, appellants contend that the trial court erred in rendering summary judgment because fact issues exist concerning their conversion claim, and because a proper construction of the lease/contract precludes summary judgment. We affirm the trial court's judgment.

Willett Wilson, III, owns the mineral estate in 136.83 acres of land in Calhoun County. On August 5, 1981, he leased this mineral estate to Robert R. Reed, II, retaining a one-fourth royalty interest in all oil, gas and other minerals produced. Reed assigned the Wilson Lease to Oil & Gas Reserves, Inc., who in turn assigned the lease to Clover Energy Corporation. The Wilson Lease was pooled and unitized with other leases to form the Willett Wilson, III, Gas Unit No. 1 and the Wehmeyer Estate Gas Unit No. 2–T.

United Texas and South Gulf entered into gas purchase contracts with Clover Energy to purchase the gas produced from the acreage which is the subject of the Wilson Lease. Appellants allege that United Texas and South Gulf have failed to provide them with an accounting for their share of the royalty gas, or, alternatively, have failed to pay them for their share of the royalty gas produced from the Wilson and Wehmeyer units for the period of time in dispute, November 1, 1982, through August 31, 1983. Appellants sued United Texas and South Gulf for conversion, unjust enrichment and breach of contract.

United Texas and South Gulf filed a joint motion for summary judgment asserting that appellants had no cause of action based upon contract or tort (conversion). The trial court granted the motion. Appellants appeal only on that part of the trial court's judgment pertaining to their conversion action.

■ The movant for summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *R.I.O. Systems, Inc. v. Union Carbide Corp.*, 780 S.W.2d 489, 490 (Tex.App.—Corpus Christi 1989, writ denied). In deciding whether a disputed material fact issue exists to preclude summary judgment, evidence favorable to the non-movant will be accepted as true. In that context, every reasonable inference will be indulged in the non-movant's favor and any doubts resolved in its favor. The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but whether the summary judgment proof es-

tablishes as a matter of law that there is no genuine issue of fact concerning one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); *R.I.O. Systems*, 780 S.W.2d at 490.

By two points of error, appellants complain that the trial court erred by granting summary judgment because fact issues exist concerning their conversion claim and because a proper construction of the lease/contract precludes a summary judgment disposing of their conversion claim. Specifically, appellants maintain that the last sentence of paragraph 3(c) of the Wilson Lease governs the disposition of this case. Paragraph 3(c) states:

3. The royalties reserved by LESSOR, and which shall be paid by LESSEE, are:

.    .    .    .    .

(c) *On dry gas* or *residue gas* the value of one-fourth (¼) part of such dry gas or residue gas sold or utilized by LESSEE on or off the premises, less severance and production taxes. The value of such gas is to be based upon the highest market price paid or offered in the general area; or that price which LESSEE recieves (sic) for his gas, whichever is greater. *LESSEE may dispose of LESSOR's royalty gas or gaseous hydrocarbons in accordance with any proposed agreement submitted to LESSOR by LESSEE and approved by LESSOR; and thereafter during the life of such agreement LESSEE shall account to LESSOR for said royalty gas on the basis of such agreement.* [last emphasis ours].

In his affidavit, Willett Wilson, III, declares that no one ever submitted any proposed agreement to him relating to the sale of gas produced under the Wilson Lease. He states that during the period in dispute (November 1982 through August 1983), he did not authorize any contract or agreement concerning the sale of any gas produced under the Wilson Lease. Appellants contend that since United Texas and South Gulf purchased royalty gas from Clover Energy, who did not have Wilson's authority to sell the gas, United Texas and South Gulf converted their royalty gas.

Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex.1971); *Tripp Village Joint Venture v. MBank Lincoln Centre*, 774 S.W.2d 746, 750 (Tex.App.— Dallas 1989, writ denied); *Virgil T. Walker Construction Co. v. Flores*, 710 S.W.2d 159, 160 (Tex.App.—Corpus Christi 1986, no writ). To constitute a conversion, it is not necessary that there be a physical taking of the property in question. The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion. *Waisath*, 474 S.W.2d at 447. Obviously, the party alleging conversion must first prove that the property allegedly converted belongs to him. Thus, appellants may recover under a conversion theory if they can show that they own the gas sold to United Texas and South Gulf.

An oil and gas lease may provide for the payment of royalty "in kind" or "in money". *Morriss v. First National Bank*, 249 S.W.2d 269, 279 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.). A royalty owner who receives his royalty "in kind" is entitled to a share of the oil or gas as produced. On the other hand, a royalty owner who receives his royalty "in money" is entitled to be paid in cash for the value or market price of his share of the product. *Martin v. Glass*, 571 F.Supp. 1406, 1410 (N.D.Tex.1983), *aff'd*, 736 F.2d 1524 (5th Cir.1984); Williams and Meyers, *Manual of Oil and Gas Terms*, p. 857, (7th ed. 1987). Furthermore, when the royalty is payable in money, the lease itself passes title to all the gas to the lessee. *Humble Oil & Refining Co. v. Poe*, 29 S.W.2d 1019, 1020 (Tex.Comm'n App.1930, holding approved); *Tidewater Associated Oil Co. v. Clemens*, 123 S.W.2d 780, 783 (Tex.Civ.App.—Texarkana 1938, no writ); *see also Sowell v. Natural Gas Pipeline Co.*, 604 F.Supp. 371, 378 (N.D.Tex.1985).

The appellate courts interpret an oil and gas lease by examining the parties'

intentions from the four corners of the lease contract. The parties' intentions are ascertained by considering all the provisions of the lease, and by harmonizing, if possible, those provisions which may appear to be in conflict. *Read v. Britain,* 414 S.W.2d 483, 486 (Tex.Civ.App.—Amarillo 1967), *aff'd,* 422 S.W.2d 902 (Tex.1968). In the instant case, paragraph 3 of the Wilson Lease contains three different measures for determining how the royalty is to be paid. Subsection (a) applies to royalties on oil, subsection (b) applies to royalties on distillate and subsection (c) applies to royalties on natural gas. United Texas and South Gulf purchased only gas; therefore, subsection (c) governs this dispute. Subsection (c) states, in pertinent part:

> (c) *On dry gas* or *residue gas* the value of one-fourth (¼) part of such dry gas or residue gas sold or utilized by LESSEE on or off the premises, less severance and production taxes. The value of such gas is to be based upon the highest market price paid or offered in the general area; or that price which LESSEE recieves (sic) for his gas, whichever is greater....

In contrast, the oil royalty provision provides that oil royalties are "one-fourth (¼) of that produced and saved from said land, the same to be delivered to LESSOR free of all cost and expenses...." The distillate royalty provision is identical in all relevant aspects to the oil royalty provision. We conclude that the language used for the different royalty provisions reflects that the parties to the Wilson Lease intended that the gas royalties were to be paid "in money" based upon the value of one-fourth of the gas sold, and that the oil and distillate royalties were to be paid "in kind". *See Read,* 414 S.W.2d at 485–86.

In *Curry v. Texas Co.,* 8 S.W.2d 206 (Tex.Civ.App.—Eastland 1928, writ dism'd), Texas Company agreed to pay Curry an "in money" royalty on all gas produced from a lease. Texas Company completed a gas well on the lease and delivered the gas to the Hanlon Gasoline Company. Curry sued Hanlon for conversion, alleging that Hanlon did not pay him for the gas as required in the agreement he had with Texas Company. The appellate court held that where the royalty is payable in money and the lessee fails to pay the royalty, the lessor does not have an action against a party who purchases the gas unless the purchaser has contracted to pay the royalties to the lessor. *Curry,* 8 S.W.2d at 210.

In the instant case, paragraph 3(c) of the Wilson Lease provides that the "lessee *may* dispose of lessor's royalty gas ..." and thereafter *"shall account* to lessor for said royalty gas on the basis of such agreement." As such, lessor shall be paid "in money". The gas purchase contracts do not require either United Texas or South Gulf to pay the royalties to Willett Wilson, III, as lessor as appellant contends. The undisputed evidence shows that United Texas and South Gulf paid the purchase price for the gas to the original lessee's assignee, Clover Energy and into the registry of the bankruptcy court having jurisdiction over Clover Energy's bankruptcy action. As such, appellants do not allege that either United Texas or South Gulf were Clover Energy's assignees, or that they held the mineral estate under a sublease. Appellants cannot maintain a cause of action for conversion against either United Texas or South Gulf. We hold that the trial court did not err in granting summary judgment concerning appellants' cause of action for conversion.

The trial court's judgment is AFFIRMED.