**J.C. KINLEY CO., et al., Appellants,**

v.

**HAYNIE WIRE LINE SERVICE, INC., et al., Appellees.**

**No. 01–85–0364–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 27, 1985.

Rehearing Denied Feb. 6, 1986.

**194**

B.R. Pravel, Steve Rosenblatt, Pravel, Gambrell, Hewitt & Kimball, Freeman Bullock, Houston, for appellants.

Jeffrey W. Tayon, Gregory L. Maag, Butler, Binion, Rice, Cook & Knapp, Houston, for appellees.

Before SAM BASS, WARREN and DUNN, JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a summary judgment in favor of appellees.

We affirm.

In 1947, appellants, J.K. Kinley Co., et al. ("Kinley") obtained U.S. Patent 2,426,106 for an oil well perforating gun and later obtained U.S. Patents 2,540,122 and 2,544,-601 for improvements on the 1947 patent.

In 1957, appellees, Haynie Wire Line Service, Inc., et al. ("Haynie") entered into a nonexclusive, nontransferable license to use the inventions of Kinley relating to oil field perforating guns, equipment, and parts under the patents listed above. The license provided:

"... that Licensee does not have the right to manufacture or sell, or have manufactured or sold, the devices of said inventions, or parts thereof...."

There is no reference in the agreement regarding any confidential or secret device, information, or part, or of any duty of confidentiality on the part of Haynie. The contract expressly contemplated that Haynie would disassemble, inspect, and replace certain expendable parts in the normal operation of the tools.

As a licensee, Haynie provided perforating services using perforator guns leased from Kinley under the license. Haynie had previously been engaged in the oil well perforation business, and had bought, manufactured, and used perforating tools in its business. Haynie resumed work, perforating oil wells with its own equipment after the agreement was terminated.

The licensor-licensee relationship existed until March 1965, when U.S. Patent 2,426,-106 expired, and the agreement was terminated by Haynie pursuant to its terms. The termination, requiring Haynie to return all perforating guns to Kinley, fostered a dispute, which was settled in January 1966. The dispute concerned Haynie's manufacture of certain replacement parts of the leased tools and the return of a perforator that had been lost in an oil well. The settlement agreement cautioned Haynie against infringement of the patents, which had not yet expired, but made no mention of any confidential relationship or duty still existing or to exist in the future between the parties under the 1957 agreement.

After the settlement, Haynie manufactured a perforator for its own use in 1967, and since 1975, has manufactured and sold approximately 10 perforators. At some point in time, Kinley discovered such manufacturing and sales activity and eventually arranged a sale of a gun by Haynie to a third party, Marine Brokers, Inc. in 1982. Kinley inspected the gun and determined that it incorporated many of the "confidential" features and parts that were in the perforator guns and parts leased to Haynie under the 1957 license. Kinley claims that the features and parts were neither disclosed in Kinley's issued patents nor in the art known to Haynie, but were derived from unpublished confidential information in drawings, instruction booklets, and other documents delivered to Haynie. Kinley brought suit in 1982 alleging breach of a confidential relationship.

Haynie filed two motions for summary judgment. The first motion challenged the existence of any confidential relationship between the parties either by contract or operation of law and asserted that the evidence shows, as a matter of law, that Kinley did not possess any trade secrets that could have been appropriated by Haynie. The second motion alleged that the actions for breach of confidential relationship or breach of contract, or both, were barred by the statutes of limitations.

The district court found as a matter of law that Kinley's cause of action was barred by the statutes of limitations. In March 1985, the cause was again reconsidered, and both motions for summary judgment were granted.

Kinley seeks reversal in its first and fourth points of error on the grounds that fact issues preclude an award of summary judgment on the basis that no confidential relationship existed either by contract or by operation of law, and that Haynie's cause of action is barred by the statute of limitations.

The question on appeal, as well as in the trial court, is *not* whether the summary judgment proof *raises fact issues* with reference to the essential elements of the claim or cause of action, but whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. However, on appeal, in deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Wilcox v. St. Mary's University*, 531 S.W.2d 589, 592–93 (Tex.1975). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

"When summary judgment is sought on the basis that limitations have expired, it is the movant's burden to conclusively establish the bar of limitations. Where the nonmovant interposes a suspension statute, such as Article 5537, or pleads diligence in requesting issuance of citation, the limitation defense is not conclusively established until the movant meets his burden of negating the applicability of these issues." *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex.1975) (*Oram v. General American Oil Co.*, 513 S.W.2d 533, 534 (Tex. 1974)). However, if the plea of the nonmovant does not challenge the limitations defense, but is in the nature of confession and avoidance, then the nonmovant does have the burden of raising a fact issue with respect to his affirmative defense to limitations. *See Nichols v. Smith*, 507 S.W.2d 518, 520 (Tex.1974); *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–937 (Tex.1972).

In measuring the summary judgment evidence, pleadings, even if sworn to, do not constitute summary judgment proof. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). The requirements for affidavits are that the affidavit must show affirmatively that it is based on personal knowledge and that the

facts sought to be proved therein be "admissible in evidence" at a conventional trial. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); Tex.R.Civ.P. 166–A(e). Further, an affidavit must set forth facts, not conclusions, in order to raise an issue of fact. *Brownlee*, 665 S.W.2d at 112; *Inwood Forest Community Improvement Association v. R.J.S. Development Co.*, 630 S.W.2d 751, 754 (Tex.App.—Houston [1st Dist.] 1982, no writ). Deposition testimony may be given the same weight as any other summary judgment evidence, and if it meets the standard of summary judgment evidence (i.e., by being clear, positive, direct, otherwise free from contradictions and inconsistencies, and, if untrue, could be readily controverted), it will uphold a summary judgment. *Wiley v. City of Lubbock*, 626 S.W.2d 916, 918 (Tex.App.—Amarillo 1981, no writ); Tex.R.Civ.P. 166–A(c). If conflicting inferences may be drawn from statements made by the same party (e.g., one in an affidavit and the other in a deposition), a fact issue is presented. *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 562–63 (Tex.1962). Finally, when the summary judgment record is incomplete, any omitted documents are presumed to establish the correctness of the judgment. *De-Bell v. Texas General Realty, Inc.*, 609 S.W.2d 892, 893 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ); *See also Foster v. Hubbard Independent School District*, 619 S.W.2d 607, 609 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.).

Haynie contends that Kinley's action is barred by *stare decisis*, and cites *Luccous v. J.C. Kinley Co.*, 376 S.W.2d 336 (Tex. 1964). There, Kinley entered into a written license agreement whereby it granted Luccous a license, similar to the one at bar, to use Kinley's patented sand-line cutters. Kinley alleged that subsequent to the expiration of the patent and licensing agreement, Luccous continued to use and rent cutters that it had manufactured based on the information secured from Kinley under the licensing agreement. The Texas Supreme Court denied Kinley injunctive relief, concluding that it was evident that the trade secrets involved covered the same subject matter as the patent grant. The court emphasized that it had specifically not been held in *Hyde Corp. v. Huffines*, 158 Tex. 566, 314 S.W.2d 763 (1958), that "the trade secret itself survived the complete disclosure in the patent grant." *Luccous*, 376 S.W.2d at 339.

Kinley claims, however, that the instant suit is not barred because it is based on the transmission of unpublished confidential information in the context of a licensor-licensee relationship. Such information is allegedly beyond that disclosed in issued patents that are, admittedly, public knowledge and not protected as trade secrets.

■ In determining whether a confidential relationship exists, this Court must examine the entire record. *Hyde Corp. v. Huffines*, 158 Tex. at 587, 314 S.W.2d at 777. A duty of confidentiality is not implied, as a matter of law, from the licensor-licensee relationship between the parties. *Id.* "Although an express contractual provision is not required to establish a duty of confidentiality, the absence of an agreement restricting disclosure of information is a factor the court may consider." *Daily International Sales Corp. v. Eastman Whipstock, Inc.*, 662 S.W.2d 60, 63 (Tex. App.—Houston [1st Dist.] 1983, no writ). Other factors include the nature and extent of security precautions taken by the possessor of the trade secret to keep the information from the general public, and the degree to which the information has been placed in the public domain by voluntary disclosure. *Rimes v. Club Corp. of America*, 542 S.W.2d 909, 913–14 (Tex.Civ.App. —Dallas 1976, writ ref'd n.r.e.); *Furr's Inc. v. United Specialty Advertising Co.*, 385 S.W.2d 456, 459 (Tex.Civ.App.—El Paso 1964, writ ref'd n.r.e.), *cert. denied*, 382 U.S. 824, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965); *Lamons Metal Gasket Co. v. Traylor*, 361 S.W.2d 211, 212–13 (Tex.Civ.App. —Houston 1962, writ ref'd n.r.e.).

The present case is distinguishable from *Hyde Corp. v. Huffines*, and also from *K & G Oil Tool & Service Co. v. G & G Fishing Tool Service*, 158 Tex. 594, 314 S.W.2d 782

(Tex.1958), because in those cases, the defendants had acquired knowledge from a confidential relationship that existed *before* the issuance of the patents. The licensing agreement in *Hyde* provided for the *manufacture and sale* of the invention with royalties paid to the inventor. Liability was not predicated on the existence of a mere lease of equipment alone. Following the reasoning in *Hyde,* a confidential relationship has been found to arise when the parties were not simply licensor and licensee, they were also joint venturers. *Crutcher-Rolfs-Cummings, Inc. v. Ballard,* 540 S.W.2d 380, 387 (Tex.Civ.App.— Corpus Christi 1976, writ ref'd n.r.e.), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

Our facts are that Haynie did not approach Kinley seeking access to new technology for a new business. Haynie had been perforating oil wells with similar equipment since 1949 and continued to do so even after the licensing agreement and patent expired. Also, there is no evidence that Kinley and Haynie ever operated as joint venturers.

In *K & G Oil Tool,* 314 S.W.2d at 785–86, the licensing agreement contained a specific provision prohibiting disassembly of the tool in dispute, which both parties understood was intended to prevent anyone from determining the internal construction of the tool. Such a provision is absent from the agreement in the present case. It expressly contemplates that Haynie would disassemble, inspect, replace, and manufacture certain expendable parts in the normal operation of the tools. Also absent was any requirement that the work be performed in private beyond the view of other oil field technicians. In accord with this understanding was the provision that any improvements made on the perforator by Haynie were to be Haynie's property.

The undisputed evidence shows that Haynie frequently disassembled, inspected, repaired, and manufactured parts of the leased perforator in the presence of others not in its employ. Kinley also admits that it sold one perforator in France that was later recovered, but there was no evidence that any copying had occurred. Despite the allowance by Kinley of the dissemination of information about the tool, Kinley claims that the transmittal of manuals, instruction booklets, and drawings allegedly furnished to Haynie, in itself created a confidential relationship as a matter of law. Said publications (some with the notation "confidential") allegedly revealed information about internal components and the operation of the perforator not disclosed in the Kinley patents.

Kinley claims in its affidavit that Haynie received the aforementioned drawings and instruction booklets in Haynie's capacity as a licensee, and that the material was treated as highly confidential by all Kinley licensees. Kinley's exhibits include a confidential catalog and correspondence sent to another licensee, and a field manual sent to Haynie's brother in Louisiana. There is no relevant correspondence from Kinley to Haynie. Haynie denies, both in its affidavit and deposition, that it was ever informed either orally or in writing that any information was confidential, that there was any duty of confidentiality, or that it was required to disassemble, inspect, or repair the tool in private. Haynie further testified that it never received the aforementioned booklets, manuals, and drawings allegedly furnished to it by Kinley. Haynie only stipulated that one drawing of the tool, which drawing was produced from its files, originally came from Kinley, but it did not know when or how it was obtained.

The summary judgment evidence indicates the failure of Kinley to take affirmative steps to maintain the secrecy of its alleged trade secrets. Kinley does not controvert Haynie's testimony by showing how Haynie was informed, by whom and when it was informed, or when and under what terms Haynie agreed to keep the information in confidence. Kinley's statement about Haynie's knowledge of confidentiality or its receipt of the confidential information is a mere subjective conclusion with no supporting facts, and therefore, does not

constitute competent summary judgment evidence.

■ "It is self-evident that the subject matter of a trade secret must be secret." *Luccous v. J.C. Kinley Co.*, 376 S.W.2d at 338. Here, there was undisputed evidence showing a total lack of any precautions taken by Kinley to maintain the secrecy of the internal parts of the leased tools, and there were no contractual provisions establishing a duty of confidentiality. Therefore, the trial court did not err in concluding, as a matter of law, that no confidential relationship existed between the parties.

Having found that no confidential relationship existed between the parties, we further find that the trial court was correct in holding that appellants' cause of action is barred by the applicable statute of limitations, as suit was not brought within two years of the occurrence of the first breach. Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon Supp.1985).

Under Texas law, fraudulent concealment is an affirmative defense to an assertion that the statute of limitations has run. *Timberlake v. A.H. Robins Co. Inc.*, 727 F.2d 1363, 1366 (5th Cir.1984). The plaintiff must prove that the defendant had actual knowledge of the facts allegedly concealed and a fixed purpose to conceal the wrong. Mere concealment does not constitute fraudulent concealment for purposes of tolling the statute of limitations; rather, the plaintiff is under a duty to exercise reasonable diligence to discover its cause of action. *Id.*

Kinley does not dispute that Haynie began manufacturing and selling perforators to third parties as early as 1975, but maintains said sales were undisclosed and unadvertised. Haynie testified in its deposition that it chose not to advertise because "the whole oilfield" knew about its activity. Nevertheless, Kinley argues that Haynie has failed to present any evidence that would have put Kinley on notice of Haynie's actions "at any particular point in time."

Ordinarily, one's ignorance of one's cause of action will not prevent the statute from running. *Houston Water-Works Co. v. Kennedy*, 70 Tex. 233, 236, 8 S.W. 36 (1888); *State v. Jones*, 315 S.W.2d 435, 438 (Tex.Civ.App.—Dallas 1958, writ ref'd n.r. e.). "The primary purpose of limitations, to prevent litigation of stale or fraudulent claims," must also be kept in mind. *Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex. 1977).

■ Kinley has failed to establish fraudulent concealment on the part of Haynie. Uncontroverted evidence in the record further indicates Kinley's failure to use reasonable diligence in pursuing its alleged cause of action. A previously settled dispute in 1966 concerning the manufacture of replacement parts and the return of certain lost parts by Haynie created a red flag for Kinley. There is nothing in the record to explain why Kinley waited so long to investigate its previous licensee, a local competitor in a highly specialized field.

Haynie is entitled to prevail upon its motion for summary judgment after establishing the applicability of the statutes of limitations, absent proof from Kinley showing some excuse for delay. *McClelland v. Peterson*, 494 S.W.2d 583 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ).

Kinley's first and fourth points of error are overruled. Kinley's second and third points of error are also overruled.

The judgment is affirmed.