**Nick CARR, and
William H. George, Jr.,
Plaintiffs–Appellants,**

v.

**ALTA VERDE INDUSTRIES, INC.,
Defendant–Appellee.**

**No. 89–1991.**

United States Court of Appeals,
Fifth Circuit.

Feb. 8, 1991.

Stuart N. Henry, Henry, Kelly & Bunch, Myron J. Hess, Austin, Tex., for plaintiff-appellant.

Roger James George, Jr., Julie A. Ford, Graves, Dougherty, Hearon & Moody, Austin, Tex., for defendant-appellee.

Before CLARK, Chief Judge, and REAVLEY and KING, Circuit Judges.

PER CURIAM:

Plaintiffs–appellants Nick Carr (Carr) and William H. George (George) appeal the district court's dismissal of their lawsuit under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*, commonly known as the Clean Water Act (the Act), for statutory damages and injunctive relief. Carr and George brought suit as private citizens under 33 U.S.C. § 1365. Following a bench trial, the district court held that because no violations of the Act had occurred on or since the date of the complaint, and because no violations will occur in the future, Carr and George did not have standing to sue defendant-appellee Alta Verde Industries (Alta Verde). We affirm the district court's Fed.R.Civ.P. § 41(b) dismissal on the basis that Carr and George failed to prove their allegation that Alta Verde violated the Act by discharging pollutants without a National Pollutant Dis-

charge Elimination System (NPDES) permit on or since the date of the complaint or that such a violation will occur in the future. *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49, 66, 108 S.Ct. 376, 386, 98 L.Ed.2d 306 (1987).[1]

I.

Carr and George filed this lawsuit on December 14, 1987, alleging that between April and July, 1987, Alta Verde discharged pollutants from its south feedlot into Rosita Creek and, eventually, into the Rio Grande River without an NPDES permit. Carr and George sought statutory damages and injunctive relief under the Act.

The Alta Verde feedlot holds between 20,000 and 30,000 cattle, and at the time the complaint was filed, consisted of 230.9 acres of land. Waste, ostensibly cow manure, ran off into a wastewater holding and disposal system consisting of six wastewater holding ponds. The water in these ponds was piped out to three subdivided fields adjacent to the feedlot, and was used to irrigate the fields. The fields produced alfalfa, rye, and other grains for cattle feed.

Between April and July, 1987, a series of heavy rains fell on the south feedlot. The rains caused excessive amounts of wastewater to accumulate in the holding ponds at the feedlot. In early June, a spillway was cut out of the embankment of one of the holding ponds, and wastewater discharged into an unnamed tributary of Rosita Creek. The district court found that there may have been other discharges at that time.

The district court also found that there were no discharges of wastewater or pollutants at the time the complaint was filed on December 14, 1987. Furthermore, there had not been any discharge of wastewater or pollutants from the feedlots since the filing of the complaint.[2]

---

1. For a good discussion of *Gwaltney*, see Note, Gwaltney of Smithfield v. Chesapeake Bay Foundation: *Balancing Interests Under the Clean Water Act*, 25 San Diego L.Rev. 857 (1988).

2. While the district court found that no wastewater or pollutants were discharged from the feedlots into Rosita Creek at or since the time of the filing of the complaint, the court did find that there were post–1987 discharges from Alta Verde's grazing fields in 1988 and 1989. These

Carr and George appeal on two grounds: (1) that the district court erred in holding that Alta Verde was exempt from the NPDES permit requirement and (2) that the district court erred in holding that Carr and George did not have standing to sue.

■ We review the district court's factual findings in a Fed.R.Civ.P. § 41(b) dismissal under the clearly erroneous standard, and reject the district court's findings only if our review of the entire record impels the definite and firm conviction that a mistake has been committed. *Joseph v. St. Charles Parish School Bd.*, 736 F.2d 1036, 1038 (5th Cir.1984). We review questions of law *de novo*.

## II.

■ The district court found that, under *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, Carr and George had no standing to sue Alta Verde. 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987); 33 U.S.C. § 1365. In *Gwaltney*, the Supreme Court considered whether the federal courts had jurisdiction of citizen suits under the Clean Water Act for wholly past violations of NPDES permit requirements. 484 U.S. at 52, 108 S.Ct. at 379. The Court found that the Act "does not permit citizen suits for wholly past violations." *Id.* at 64, 108 S.Ct. at 385.

The Court did, however, differentiate between the plaintiffs' standing to bring the suit and whether, after a trial, the citizen-plaintiffs could prevail. *Id.* at 66, 108 S.Ct. at 386. The Court found that subject matter jurisdiction attached under 33 U.S.C. § 1365 "over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation." *Gwaltney*, 484 U.S. at 66, 108 S.Ct. at 386. If the defendants fail to show that the plaintiffs lack standing at or before the summary judgment stage, and the suit goes to a trial on the merits, the "Constitu-

tion does not require that the plaintiff offer this proof [of a continuous or intermittent violation] as a threshold matter in order to invoke the District Court's jurisdiction." *Id.* Therefore, in the instant case, Carr and George had standing to bring suit because they alleged that there was a continuous or intermittent violation, and Alta Verde did not successfully refute this allegation until trial.[3]

■ While the district court had jurisdiction, in order to prevail on the merits Carr and George must nevertheless prove that Alta Verde's violation was not "wholly past." *Gwaltney*, 484 U.S. at 52, 108 S.Ct. at 379. The *Gwaltney* Court did not clearly define what constituted a "wholly past violation." On remand, the Fourth Circuit established a two-part test to determine whether the plaintiff has proved an ongoing violation.

A plaintiff could prove an ongoing violation either

(1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of recurrence in intermittent or sporadic violations. Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition.

*Chesapeake Bay Foundation v. Gwaltney of Smithfield*, 890 F.2d 690, 693 (4th Cir. 1989). We adopt this two-part test in order to determine whether Carr and George can prevail under the Act.

It is uncontested that Alta Verde did not have an NPDES permit at the time of the alleged violations. We will assume, *arguendo*, that discharges would be violations of the Act. 33 U.S.C. §§ 1311, 1342. Section 1311 "prohibits the discharge of any pollutant into the nation's waters unless the discharge complies with its specific

---

post–1987 discharges were tailwater runoff, and any waste in that water was from manure in the fields, not from the feedlot.

**3.** This court discussed the distinction between cases in which standing is a threshold question and cases in which the merits and standing

questions are intertwined. *Barrett Computer Services, Inc. v. PDA, Inc.*, 884 F.2d 214, 218–20 (5th Cir.1989) (discussing the Supreme Court's opinions in *Gwaltney* and in *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)).

requirements." *American Petroleum Institute v. EPA,* 787 F.2d 965, 969 (5th Cir. 1986). "Compliance may be achieved by obtaining a permit issued pursuant to ... 33 U.S.C. § 1342.... NPDES permits must incorporate applicable technology-based effluent limitations guidelines promulgated by EPA on an industry-by-industry basis under ... 33 U.S.C. §§ 1311(b), 1314.-" *Id.*

As the *American Petroleum Institute* court explains, the Best Available Technology (BAT) standards are the criteria for issuing NPDES permits, replacing the case-by-case method used previously. *Id.* Therefore, meeting the BAT standard does not exempt Alta Verde from the NPDES permit requirement.

Because Carr and George are bringing a citizen suit under 33 U.S.C. § 1365, however, in order to prevail they must prove (1) that Alta Verde was discharging wastewater without a permit on or after the date the complaint was filed or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of recurrence of discharges without a permit in intermittent or sporadic violations.

The district court found that there was no discharge of pollutant wastewater from the south feedlot at or since the time of the complaint. Furthermore, the court found that "from November 1988 until present, the wastewater disposal system at the feedlot has been designed, constructed and operated to contain all process generated wastewater plus the runoff from a 25–year, 24–hour event."[4] Finally, the court found that "there is no reasonable likelihood that discharges will again occur at the South Feedlot, absent either a chronic rainfall event or a catastrophic event exceeding the 25–year, 24–hour figure." (footnote omitted). The fact that the south feedlot meets BAT standards does not mean it is exempt from the permit requirement, but

lends support to the district court's finding that there is no reasonable likelihood of future discharges. Because there is no likelihood of future discharges, and no violations on or after the filing of the complaint, George and Carr, as citizens, cannot prevail under the Fourth Circuit's test.

When these factual findings, which are based on expert testimony and are not clearly erroneous, are applied to the Fourth Circuit's *Gwaltney* standard, it is clear that there is no continuing violation. Carr and George, therefore, cannot prevail under the Act.

### III.

For the foregoing reasons, we AFFIRM the district court's dismissal of Carr and George's claim. The dismissal is with prejudice.

AFFIRMED.

---

**4.** A feedlot meets the BAT standards if the feedlot is designed, constructed, and operated to contain all process generated wastewaters plus the runoff from a 25–year, 24–hour rainfall event. 40 C.F.R. § 412.13(b). Chronic or cata-

strophic rainfalls are rainfalls that cause an overflow of process wastewater from a facility designed, constructed, and operated to contain all process generated wastewaters plus the runoff from a 25–year, 24–hour rainfall event. *Id.*