In the Matter of PLACID OIL COMPANY, Debtor.

PROFESSIONAL GEOPHYSICS, INC., Appellant,

v.

PLACID OIL CO., Appellee.

No. 90–1802.

United States Court of Appeals, Fifth Circuit.

May 31, 1991.

---

**108.** *Anderson v. United States,* 417 U.S. 211, 224, 94 S.Ct. 2253, 2262, 41 L.Ed.2d 20 (1974).

Rufus Wallingford, Thomas C. Godbold, Houston, Tex., for appellant.

Khent H. Rowton, Wright & Rowton, Dallas, Tex., for appellee.

Before THORNBERRY, JOLLY, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Appellant Professional Geophysics, Inc. (PGI), a producer of seismic data, filed an administrative claim in bankruptcy court against appellee/debtor Placid Oil Co. (Placid), claiming that Placid had used its data without paying for it. The bankruptcy court granted summary judgment in favor of Placid, holding that PGI's claim was barred by the statute of limitations in that if it had exercised reasonable diligence, PGI would have known, within the limitations period, that Placid was using its information. The district court affirmed, and PGI now appeals.

I.

The parties do not dispute the facts and agree that the substantive issues are governed by Texas law. PGI obtains seismic data and sells it to oil companies for use in oil and gas exploration. From 1979 through 1983, PGI organized a series of seismic-data-gathering projects, or "group shoots," in which several oil companies

shared the cost of acquiring seismic data in exchange for exclusive access to that data. Each company that participated in a group shoot agreed not to transfer the data to outside companies.

Hunt Energy Corporation (Hunt) was one of the group shoot participants. Beginning in 1979, Hunt duplicated the PGI data and furnished a copy to Placid's geophysicists. Placid was not affiliated with Hunt and was not a group shoot participant. Placid knew that Hunt had signed a secrecy covenant.

In 1983, Hunt closed its office and moved its PGI seismic data to Placid's data room in Placid's offices in Jackson, Mississippi. On July 11, 1983, Durwood Craft, a geophysicist who worked for Placid, sent the following letter to Jerry Hardin, a geophysicist employed by PGI:

> As of July 1, 1983, Hunt Energy Corporation was merged with Placid Oil Company. The Jackson office is no longer responsible for operations in North Louisiana and Southern Arkansas.

> Therefore, please ship all other North Louisiana–Southern Arkansas data to:

> Mr. Don Hickey
> Placid Oil Company
> 3900 Thanksgiving Tower
> Dallas, Texas 75201

After receiving the letter, PGI began to transfer its data directly to Placid in Dallas, but the letter was in error: Hunt in fact had not merged with Placid.

Placid filed for bankruptcy in August 1986. PGI states that it first discovered, in November 1986, that Placid wrongfully had obtained and used its data; it then brought its administrative claim. In 1987, Placid transferred PGI's data to another corporation, Prosper Energy Corporation. In June 1988, PGI learned of this exchange and amended its complaint to include this new fact.

After conducting hearings on PGI's administrative claim, the bankruptcy court granted Placid's motion for summary judgment. The court held that PGI knew in 1983 that Placid had its data and with reasonable diligence could have known that Placid's possession was wrongful. The court therefore held that the conversion action was barred by a two-year statute of limitations. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986). The district court affirmed, noting that a reasonably prudent person with PGI's knowledge would have made an inquiry that would have revealed Placid's wrongful possession. PGI now appeals.

## II.

### A.

Under Fed.R.Civ.P. 56(c), summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Ordinarily, we review the evidence de novo to determine whether summary judgment was appropriate, and we do not affirm a summary judgment unless "we are convinced, after an independent review of the record, that 'there is no genuine issue as to any material fact' and that the movant is 'entitled to a judgment as a matter of law.'" *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.) (quoting rule 56(c), *clarified*, 832 F.2d 1378 (5th Cir.1987) (per curiam)). Placid, however, suggests that a more deferential clearly-erroneous standard of review is appropriate in a nonjury case and that a court appropriately may draw inferences from the evidence in a bench trial, even when considering a motion for summary judgment.

PGI argues that the bankruptcy court went beyond the scope of a summary judgment proceeding by weighing the evidence before it, and that the bankruptcy court could not have granted Placid's motion for summary judgment unless the court had found that the letter notifying PGI of the purported merger did not prevent PGI from exercising reasonable diligence. PGI thus argues that the question involving the reasonableness of its actions requires a factual determination that may not be made at

the summary judgment stage of the proceedings.

In support of its contention, PGI directs our attention to that portion of *Liberty Lobby* that states that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." 477 U.S. at 255, 106 S.Ct. at 2513. Placid responds that the Court could not have meant this admonition to apply in nonjury cases and directs us to decisions within our own circuit that have articulated a more lenient standard for summary judgment following bench trials.

Placid specifically refers to our opinion in *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 273 n. 15 (5th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), in which we acknowledged that we already "arguably" have created different summary judgment standards to apply in, respectively, jury and nonjury cases. We analyzed a number of opinions from this court holding that the standard for summary judgment in nonjury cases mirrors the standard for involuntary dismissal under Fed.R.Civ.P. 41(b).

■ Among the cases cited, 812 F.2d at 273 n. 15, is *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218 (5th Cir.1986). There we acknowledged that the Court in *Liberty Lobby* had equated the standard for summary judgment with the standard for directed verdict under Fed.R.Civ.P. 50(a); thus we stated that "in the same fashion, in nonjury cases [the summary judgment standard] mirrors the standards for dismissals provided by Rule 41(b)." *Id.* at 223. Unlike the standard for directed verdict under Rule 50(a), the standard under Rule 41(b) appears to allow a court to weigh evidence and draw reasonable inferences. *See North Miss. Communications, Inc. v. Jones*, 792 F.2d

1330, 1333 (5th Cir.1986). We review factual findings following a Rule 41(b) dismissal under a clearly-erroneous standard.[1]

Although recognizing that this circuit had "arguably articulated" two different standards for summary judgment review, the panel in *Phillips* did not apply the separate standard, as the court found that it could "affirm the judgment of the district court in this case on the basis of the general summary judgment standard set forth in a long line of cases in this circuit and in *Liberty Lobby*." 812 F.2d at 274 n. 15. The court thus "merely note[d] the question of whether a different and arguably more lenient summary judgment standard should apply in nonjury cases." *Id.*

■ Although the question is a recurring one, we do not today decide definitively whether the differences between a jury and nonjury trial merit a difference in the review we accord the two. The reason that we need not decide this issue is that this court already has determined that a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial.

For example, in *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir.1978), we held that

[i]f decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, *even though decision may depend on inferences to be drawn from what has been incontrovertibly proved* .... A trial on the merits would reveal no additional data. Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of

---

1. *See North Miss. Communications, Inc. v. Jones,* 792 F.2d at 1333; *Carr v. Alta Verde Indus.,* 924 F.2d 558, 560 (5th Cir.1991) (per curiam). At least two other courts have cited the opinion in *Professional Managers* for the proposition that the summary judgment standard mirrors that of

rule 41(b) in nonjury cases. *See Joslyn Corp. v. T.L. James & Co.,* 696 F.Supp. 222, 232 (W.D.La. 1988), *aff'd,* 893 F.2d 80 (5th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1017, 112 L.Ed.2d 1098 (1991); *Smith v. Pool Offshore Co.,* 1987 WL 6843 at 2 (E.D.La.1987).

the proposed testimony. The judge, *as trier of fact*, is in a position to and *ought to draw his inferences* without resort to the expense of trial. [Emphasis added, citations omitted.]

The *Nunez* court concluded that where "the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions." *Id.* In *Houston North Hosp. Properties v. Telco Leasing, Inc.*, 680 F.2d 19, 22 (5th Cir.1982), we cited *Nunez* with approval in upholding the grant of a summary judgment motion requiring the district court to make a factual determination "in light of all the circumstances surrounding a given transaction."

■ In *Liberty Lobby*, the Court's primary concern was determining whether "a given factual dispute require[d] submission to a jury." 477 U.S. at 255, 106 S.Ct. at 2513. In a bench trial, however, there is no jury to whom such factual disputes may be submitted. In such a case, the judge will be the ultimate finder of fact. Although, as always, a district court must be aware that assessments of credibility come into sharper focus once live witnesses are heard, *Nunez* establishes that even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.

We follow the *Nunez* court in recognizing that it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts. If a trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district judge properly should "draw his inferences without resort to the expense of trial." *Nunez*, 572 F.2d at 1124.

B.

■ Applying this learning, we uphold the decision of the district court to grant summary judgment, under either a clearly-erroneous or a de novo standard of review. PGI's suit against Placid is based upon the tort theory of conversion: "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Wilson v. United Tex. Transmission Co.*, 797 S.W.2d 231, 233 (Tex.App.—Corpus Christi 1990, no writ). The parties agree that this cause of action is governed by a two-year statute of limitations, *see* Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986), which began to run when PGI, with the exercise of reasonable diligence, either knew or should have known of the conversion.[2]

■ Both the bankruptcy court and the district court determined that by 1983, PGI knew or should have known that Placid had converted its data and that the statute of limitations therefore should not be tolled. Whether one has exercised sufficient diligence to toll the statute of limitations is a question of fact under Texas law and usually is submitted to a jury. *See El Paso Assocs., Ltd. v. J.R. Thurman & Co.*, 786 S.W.2d 17, 21 (Tex.App.—El Paso 1990, no writ) (noting that ordinarily summary judgment should not be granted on the issue of the exercise of reasonable diligence under the discovery rule, as that issue is inherently for a jury). In this case, however, PGI admits that it knew in 1983 that Placid had its data. Moreover, it admits that it did not inquire whether Placid's use of the data was legitimate. Thus, PGI made no inquiry and used no diligence at all, and hence cannot rely upon the discovery rule to toll the running of limitations.

■ Even if PGI had no inkling that its rights were being invaded, it was in a cir-

---

**2.** *See* 50 Tex.Jur.3d, *Limitation of Actions* § 72, at 477 (1986). This so-called discovery rule most commonly is used to toll the statute of limitations for medical malpractice cases, but it has been invoked for divers causes of action.

*See, e.g., Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990) (legal malpractice); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988) (fraud).

cumstance in which a reasonable person would have investigated the situation. *See, e.g., First Nat'l Bank v. Champlin Petroleum Co.*, 709 S.W.2d 4, 5 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) (summary judgment appropriate because plaintiff "was in possession of information which would cause a reasonably prudent landowner, similarly situated [to the plaintiff], to make inquiry, which inquiry, if pursued with ordinary diligence, would have disclosed its causes of action"). Under Texas law, knowledge of facts that would lead a reasonable person to undertake further inquiry is sufficient to begin the limitations period.

PGI answers by asserting that, because of the letter, it did not know that the taking was wrongful. PGI's contention more appropriately is described as "fraudulent concealment" rather than as an application of the discovery rule. Fraudulent concealment differs from the discovery rule, but one requirement remains the same: "[E]ven if there is fraudulent concealment by the defendant, the plaintiff is required to act with diligence in seeking to discover fraud after being put on inquiry; and if it failed to do so under all of the facts and circumstances of the case, the statute will not be tolled." *Pan Am. Petroleum Corp. v. Orr*, 319 F.2d 612, 613 (5th Cir.1963) (footnote omitted) (construing Texas law).

 Under Texas law, fraudulent concealment and the discovery rule procedurally and substantively are distinct concepts. Unlike the discovery rule, fraudulent concealment is an *affirmative defense* to the statute of limitations that must be pleaded and proved by the plaintiff. *See Weaver v. Witt*, 561 S.W.2d 792, 793 (Tex.1977) (per curiam). In addition,

> The plaintiff must prove that the defendant had *actual knowledge* of the facts allegedly concealed *and a fixed purpose to conceal the wrong. Mere concealment does not constitute fraudulent concealment for purposes of tolling the*

*statute of limitations;* rather, the plaintiff is under a duty to exercise reasonable diligence to discover its cause of action.

*J.C. Kinley Co. v. Haynie Wire Line Serv., Inc.*, 705 S.W.2d 193, 198 (Tex.App.—Houston [1st Dist] 1985, writ ref'd n.r.e.) (emphasis added).[3] Because PGI has not shown that Placid, by its letter, actively sought to conceal its use of the data, PGI cannot pursue its case in the face of the statute of limitations.

The facts of *J.C. Kinley* are instructive. Kinley obtained a patent for an oil well perforating gun and leased several of the guns to Haynie Wire Line Service, Inc. According to Kinley, Haynie had agreed not to use any of the confidential information that it had obtained from Kinley regarding the guns. After the lease expired, Haynie began to manufacture its own guns. Seven years later, Kinley obtained one of Haynie's guns and determined that it contained many of the same features and parts as did Kinley's. Kinley then sued Haynie for breach of a confidential relationship. *See id.* at 194–95.

The trial court ruled for Haynie on summary judgment, and the court of appeals affirmed. Explaining why summary judgment was proper on limitations grounds, the court noted that the limitations period would not be tolled for fraudulent concealment, as Kinley neither had shown any evidence of fraud nor had used reasonable diligence in pursuing its cause of action.

> Kinley has failed to establish fraudulent concealment on the part of Haynie. *Uncontroverted evidence in the record further indicates Kinley's failure to use reasonable diligence in pursuing its alleged cause of action ....* There is nothing in the record to explain why Kinley waited so long to investigate its previous licensee, a local competitor in a highly specialized field.

*Id.* at 198 (emphasis added). Of the most significance to our case—apart from the language refuting PGI's claim that it had

---

3. *Accord Nash v. Carolina Casualty Ins. Co.*, 741 S.W.2d 598, 602 (Tex.App.—Dallas 1987, writ denied); *Dotson v. Alamo Funeral Home*, 577 S.W.2d 308, 311 (Tex.Civ.App.—San Antonio 1979, no writ).

no duty to investigate the merger letter—is that the Texas court affirmed a *summary judgment* determination of no due diligence. In Texas, due diligence thus is not always a jury issue.

PGI has not established that Placid was attempting actual fraud when its geophysicist sent the letter. Therefore, summary judgment was proper under a theory of fraudulent concealment. Any reasonable entity would have investigated a letter, emanating from a low-level official and not from corporate headquarters, before beginning to send confidential data that it claims was worth millions of dollars to someone who was not even a customer. Knowing that Placid was using its data but had not been licensed to do so, a reasonable company would have made at least some inquiry to verify that Placid's use of the data was legitimate.

The district court therefore did not err in holding that PGI's cause of action was barred by the statute of limitations. The judgment is AFFIRMED.