**Emmett Leroy DAVIS, Plaintiff,**

v.

**CITY OF GREENVILLE, MISSISSIPPI, et al., Defendants.**

**No. 4:95CV408–S–B.**

United States District Court,
N.D. Mississippi,
Greenville Division.

Aug. 28, 1997.

William H. Liston, Liston/Lancaster, Winona, MS, Walter Beauregard Swain, Jr., Swain & Swain, Greenvile, MS, for plaintiff.

Susan Fahey Desmond, Gary E. Friedman, Phelps Dunbar, Jackson, MS, for defendants.

*OPINION*

SENTER, Chief Judge.

In this case, plaintiff alleges that defendants violated his Eighth Amendment rights by failing to protect him and by denying him prompt medical attention while he was incarcerated in the city jail.[1] Presently before the court is the motion of the defendants Dennis Blass and Vince Jordan, in their individual capacities, for summary judgment. Plaintiff has conceded Blass' motion, stating that the

---

1. By separate order, the court granted plaintiff's motion to dismiss the Fourteenth Amendment claim, which was dismissed with prejudice.

claims against him "are limited to his liability as a policy maker." Plaintiff has also conceded the motion as it relates to the failure to protect claim against Jordan, leaving only the claim against Jordan for deliberate indifference to a serious medical need.

## FACTS

On December 16, 1994, the plaintiff, Emmett Leroy Davis, was arrested by City of Greenville police officers on charges of public drunkenness and petty larceny and transported to the city jail to await hearing before the municipal court judge. Davis was placed in Cell 6 by defendant Vince Jordan, the jail supervisor, and Gary Jones, a jailer,[2] with thirteen other inmates. Three days later, Davis appeared in municipal court where he pled guilty to both charges. He was fined $554.00. Because Davis was a nonresident of Mississippi, he was required either to pay the fines immediately or serve fifty-four days in the city jail. Because he was indigent, he was returned to jail and placed in Cell 6.

From the beginning of his incarceration, Davis and the other white inmate, Johnny Armstrong, were subjected to racial slurs and threats of physical violence by their black cell mates, including Damien Brown and Andre Kirk.[3] On the night of December 19, Brown and Kirk, brutally beat Armstrong. Davis pleaded with Brown and Kirk:

> And before they had beat him out there, when they first started on him, I told them to leave him alone, and they told me—they pushed me and told me, said, "White son of a bitch, you're next." And this other black guy that got out of the bottom bunk grabbed me and told me to let it go.

> \* \* \*

> [I]f I didn't, I'd have every black in the cell on me. He said, "All you're going to do is make it harder for you." And he said, "There's nothing you can do to help him. Just let it go."

2. Defendants have not requested summary judgment as to either Jones or James Thomas.

3. Davis admits he did not "snitch" on the offending inmates because he was afraid of retribution.

4. Bowman is not a defendant in this suit.

5. At one point, the Cell 6 inmates were questioned as a group about the incident. Davis

The jailer on duty, Anthony Bowman,[4] finally responded to Armstrong's screams for help. Although his investigation revealed that Brown and Kirk were the aggressors, Bowman left Brown and Kirk in Cell 6.[5] He moved Armstrong to another cell.

Early the next morning, Davis was awakened by a "pain in [his] chest," which he described as a "needle-sharp cramp." He had a small puncture wound in his chest and was bleeding slightly. A fellow inmate helped Davis summon the on-duty jailer, Jones, to the cell. Jones removed Davis so that he could be examined by outside paramedics who bandaged Davis' wound. Although Davis advised Jones that Brown and Kirk had threatened him with a beating and that he thought Brown was the person who stabbed him, he was returned to Cell 6 with Brown and Kirk.

The next morning, shortly before 7:00 a.m., Brown and Kirk pinned Davis to the floor of Cell 6 and poured some kind of caustic cleaning solution into his eyes. Davis attempted to wash the cleaning solution from his eyes and managed to summon jailer Jones to the cell. Jones examined Davis' eyes through the tray slot and determined nothing was wrong.

Jordan learned about the incident approximately three hours later:

> [Davis] was complaining about his eyes— that he couldn't see, but he had his eyes shut. I couldn't tell of any discoloration or anything on his face, but he wasn't too cooperative with me answering questions. He just kept saying he couldn't see.

Jordan led Davis to the laundry room to irrigate his eyes; afterward, Davis opened his eyes "[s]omewhat." According to Jordan, "It took us about 10 or 15 minutes to wash his face ... and after then ... he tried to open his eyes ... but he kept blinking his eyes....But he had calmed down from ini-

stated in his deposition that he told the investigating officer that Brown and Kirk had beaten Armstrong (Brown had told the officer that Armstrong fell off the top bunk), but the officer "didn't even hear me, I don't guess. He turned around and walked out, and that's the last I seen [Armstrong]."

tially what we had encountered in the cell." About 10:30 a.m., Davis was placed in the small observation tank. Jordan issued orders to Jones to call the paramedics and returned downstairs to resume his duties. He did not see Davis after that time. Jail records indicate that paramedics were called at once and arrived at the jail almost immediately, and that they transported Davis to the hospital at that time. The hospital records paint a different picture. They indicate that Davis was not transported to the hospital until 2:30 p.m., approximately four hours after Jordan's last contact with Davis.

## DISCUSSION

As previously stated, the only claim remaining against Jordan is whether he was deliberately indifferent to Davis' serious medical need.[6] Jordan maintains that he is entitled to summary dismissal of this claim because Davis cannot show that Jordan "subjectively intended to cause the plaintiff harm." According to Jordan, he is therefore entitled to qualified immunity since Davis cannot establish the Eighth Amendment violation.

"'The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). Accordingly, prison officials "must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832, 114 S.Ct. at 1976. To state a violation of the Eighth Amendment for denial of humane conditions of confinement, an inmate must prove that the prison official knew the inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 847, 114 S.Ct. at 1984.

In this case, Jordan admits Davis suffered a serious medical need, and he does not deny that he knew about Davis' need. Rather, Jordan maintains that his actions—removing Davis to the laundry room, placing

him in an observation room, and ordering paramedics to be called—were reasonable under the circumstances. Indeed, under *Farmer*, Jordan "may be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S.Ct. at 1982. In this court's view, the ultimate question is whether Jordan responded reasonably under the circumstances. For example, was it reasonable (taking the facts in the light most favorable to Davis, of course) for Jordan (1) not to call paramedics or take Davis to the emergency room **immediately** upon learning that Davis had suffered an eye injury three hours earlier or (2) not to follow-up on his own orders, thereby allowing Davis to go without proper medical treatment for at least another three hours? Although this court will ultimately act as the finder of fact in this case, it cannot, even with the leeway granted it by law, *see In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir.1991), properly resolve these questions on summary judgment.

Finally, Jordan is not entitled to summary judgment on his claim of qualified immunity. There are simply too many disputed questions of fact tied up with the issue of qualified immunity to summarily grant Jordan the protection afforded by that defense.

## CONCLUSION

Based on plaintiff's concessions, all claims against Dennis Blass in his individual capacity and the failure to protect claim against Vince Jordan in his individual capacity are dismissed with prejudice. Jordan's motion for summary judgment is denied in all other respects on plaintiff's claim for deliberate indifference to a serious medical need.

---

**6.** According to defendants' brief in support of their motion for summary judgment, Jordan does

not "dispute that the plaintiff suffered a serious medical need."