ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
 

 MALONEY, District Judge.
 

 Before the Court is the motion of Plaintiff United States of America for summary judgment against the right, title, claim, and interest of Haisam Muhidin Sbini, Lisa L. Schrank, HSM Inc., and any unknown claimants (Claimants) to the properties at 1700 Duncanville Road, 1703 South Main Street, and 1707 Main Street, in Duncan-ville, Texas (the subject properties).
 
 [1]
 
 After considering the motion, the response, and the reply, the Court concludes that the motion should be granted, and summary judgment will be entered with respect to the right, title, claim, and interest of Hais-am Muhidin Sbini, Lisa L. Schrank, HSM Inc., and any unknown claimants to the subject properties.
 

 
 *739
 
 Claimant Sbini formerly operated the Sterling Food Store in Fort Worth, Texas. Sbini was authorized in 1992 to accept food stamps by the United States Department of Agriculture. In his 1995 re-authorization application, Sbini listed Claimant Schrank as a co-owner of Sterling Food Store. Although food stamps are part of a federal program,
 
 see
 
 7 U.S.C. §§ 2011-2086, the distribution of benefits to recipients in Texas is administered by the State of Texas. In 1995, Texas converted from paper food stamp coupons to Electronic Benefits Transactions (EBT) cards, called “Lonestar Cards.” The Lonestar card works in much the same way as a privately issued debit card. Food stamp benefits are electronically added to the recipient’s Lonestar card at the beginning of each month. The recipient may then purchase eligible food items with the card by presenting it to an authorized retailer. The retailer runs the card through an electronic tracking device, which records the recipient’s card number, the date, the time, and the total amount of the transaction. The benefits recipient must also enter a personal identification number to complete the transaction. At the end of each business day, a single deposit in the amount of all of the food stamp transactions completed that day is transferred from the Federal Reserve to the authorized retailer’s account. It is unlawful under any circumstances to exchange food stamp benefits on the Lonestar card for cash. This is what occurred at the Sterling Food Store.
 

 A joint investigation by the United States Department of Agriculture and the Texas Department of Human Services revealed that Sbini, as well as his employees Margaret Chapman and Camille Issa, would regularly purchase food stamp benefits from recipients for approximately 50% of their value. This was accomplished by using recipients’ Lonestar cards to record bogus transactions in eligible food items on the Sterling Food Store electronic tracking device, and then giving the recipients cash instead of food. At the end of each business day, the Federal Reserve would credit the Sterling Food Store account for its fraudulent food stamp sales, which, of course, resulted in approximately a 100% profit per bogus transaction for the Sterling Food Store. In 1997, Sbini, Chapman, and Issa each pleaded guilty to one felony count of Illegal Redemption of Food Stamps in Tarrant County District Court.
 

 On December 17, 1996, Sbini purchased the subject properties from HSM, Inc., for $300,000. Sbini paid $5000 as a down payment, $144,871.26 at closing, and executed a promissory note for the remaining $150,-000. The $144,871.26 was paid to the American Title Company on December 17 by a wire transfer from a custodial account set up by Sbini and Schrank in the name of Shreef Sabet Sbini.
 
 [2]
 
 The summary judgment evidence shows that at least $109,919.18 of the December 17 wire transfer was the proceeds of fraudulent food stamp trafficking at the Sterling Food Store.
 

 Between December 1995 and December 1996, $447,885.17 was deposited into the Sterling Food Store Account. Of this amount, $438,022.03 was food stamp deposits from the Federal Reserve. The total food sales for Sterling Food Store for this period could not exceed $68,707.28.
 
 [3]
 
 Therefore at least $369,314.75 of the total food stamp deposits during this period were fraudulent.
 
 [4]
 
 At least 82.46% of the total deposits to the Sterling Food Store account during this period ($447,885.17)
 
 *740
 
 were fraudulent food stamp deposits. Between December 6, 1995, the date the custodial account was opened, and December 17, 1996, $133,300 was transferred from the Sterling Food Store account to the custodial account. Although some funds were withdrawn from the custodial account during this period, deposits from sources other than the Sterling Food Store account were sufficient to cover these withdrawals. Therefore, at least 82.46% of the $133,300 transferred to the custodial account, which is $109,919.18, was the proceeds of illegal food stamp trafficking.
 

 On May 3, 1999, the government filed this complaint for forfeiture claiming alternatively that the subject properties are forfeitable in their entirety pursuant to Title 18 U.S.C. § 981(a)(1)(A) as property involved in a transaction in violation of Title 18 U.S.C. § 1957, or that the properties are forfeitable in part pursuant to Title 18 U.S.C. § 981(a)(1)(C) because they were purchased with proceeds of a violation of Title 18 U.S.C. § 1029. Sbini and Schrank filed a claim and an answer to the government’s complaint, in which they admitted that “part of the funds used” to purchase the subject properties “came from Mr. Sbini’s violation of the laws of the state of Texas with respect to the Food Stamp Program.”
 

 Summary judgment should be entered only when the record establishes that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant bears the burden of establishing the propriety of summary judgment, and all pleadings and evidence are viewed in the light most favorable to the- nonmovant.
 
 Melton v. Teachers Ins. & Annuity Ass’n of America,
 
 114 F.3d 557, 559 (5th Cir.1997).
 

 Once a properly supported motion for summary judgment has been made, the adverse party must set forth specific facts showing that there is a genuine issue for trial.
 
 See Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law will determine what facts are material.
 
 Id.
 
 A dispute as to a material fact is “genuine” under Rule 56(c) only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
 
 See id.
 
 The mere existence of a scintilla of evidence in support of the non-movant’s position is insufficient to preclude a grant of summary judgment.
 
 Stewart v. Murphy,
 
 174 F.3d 530, 533 (5th Cir.1999). Summary judgment is also appropriate when the only issues to be decided in the case are issues of law, or when the non-moving party’s claims are legally deficient.
 
 Neff v. American Dairy Queen Corp.,
 
 58 F.3d 1063, 1065 (5th Cir.1995);
 
 Hang On, Inc. v. City of Arlington,
 
 65 F.3d 1248, 1257 (5th Cir.1995). On a motion for summary judgment in a case such as this one, where the Court would act as the ultimate trier of fact, the Court is permitted to draw inferences from the evidence so long as the inferences do not involve issues of witness credibility or disputed material facts.
 
 Professional Geophysics, Inc. v. Placid Oil Co.,
 
 932 F.2d 394, 398 (5th Cir.1991).
 

 Title 18 U.S.C. § 981(a)(1)(A) provides for civil forfeiture to the United States of “[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of ... section 1956 or 1957 of this title, or any property traceable to such property.” Such an action is
 
 in
 
 reto against -the property, rather than
 
 in personam,
 
 against the owner. Therefore, it does not matter if the wrongdoer whose misconduct forms the predicate for the forfeiture action was ever charged, convicted, or even acquitted of the misconduct.
 
 See United States v. One Assortment of 89 Firearms,
 
 465 U.S. 354, 366, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). However, forfeitures are disfavored and should only be enforced within the strict letter and spirit of the relevant law.
 
 See United States v. One 1936 Model Ford V-8 De Luxe Coach,
 
 307 U.S. 219, 226, 59 S.Ct. 861, 83 L.Ed. 1249 (1939). In an action for
 
 *741
 
 forfeiture brought pursuant to section 981(a)(1)(A), the government bears the initial burden of demonstrating probable cause to believe that the property is forfei-table.
 
 See United States v. Ursery,
 
 518 U.S. 267, 289, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). Probable cause consists of a reasonable ground for belief — less than
 
 prima facie
 
 proof, but more than mere suspicion.
 
 United States v. 1988 Oldsmobile Cutlass Supreme,
 
 983 F.2d 670, 674 (5th Cir.1993). If the government can make this showing, the burden shifts to the claimant to produce facts to demonstrate by a preponderance of the evidence that probable cause does not exist, or that he has a valid defense to forfeiture.
 
 Id. “If
 
 unrebutted, a showing of probable cause alone will support a forfeiture.”
 
 Id.
 
 at 675.
 

 The Court concludes that the government has demonstrated probable cause that the subject properties are forfeitable under section 981(a)(1)(A), and that Claimants have not produced any facts to show otherwise. The government has shown that the December 17, 1996, wire transfer was a violation of Title 18 U.S.C. § 1957. It is a violation of section 1957 to “knowingly engage[ ] ... in a monetary transaction in criminally derived property that is of a value greater then $10,000 and is derived from specified unlawful activity.” 18
 
 U.S.C.
 
 § 1957(a). Prohibited transactions include wire transfers. 18 U.S.C. § 1957(f)(1). A violation of Title 18 U.S.C. § 1029(a)(5) constitutes “specified unlawful activity” within the meaning of section 1957. '
 
 See
 
 18 U.S.C. § 1957(f)(3). Section 1029(a)(5) is violated when a person “knowingly and with intent to defraud effects transactions, with 1 or more access devices issued to another person or persons, to receive payment or any other thing of value during any 1-year period the aggregate value of which is equal or greater than $1000.” The Lonestar card falls under the definition of an access device in Title 18 U.S.C. § 1029(e)(1). The government has shown that Sbini violated section 1029(a)(5) by accepting Lonestar cards from food stamp recipients at Sterling Food Store, recording bogus transactions on the Sterling Food Store electronic tracking device, paying the recipients cash for a lesser amount than the recorded transaction, and receiving payment from the Federal Reserve for the full amount of the bogus transactions. Since the purchase of the subject properties was itself a money laundering transaction under section 1957, it is immaterial that claimants may have also used untainted funds for its purchase.
 
 United States v. Four Contiguous Parcels of Real Property,
 
 191 F.3d 461, 1999 WL 701914 at *5 (6th Cir.1999);
 
 United States v. One 1987 Mercedes Benz SOOE,
 
 820 F.Supp. 248, 252 (E.D.Va.1993);
 
 see United States v. One Single Family Residence Located at 15608 85th Avenue North,
 
 933 F.2d 976, 981-82 (11th Cir. 1991).
 

 In their response to this motion, Claimants make various legal arguments in an effort to avoid forfeiture, most of which are facially frivolous, and none of which are supported by meaningful legal authority. However, the Court will address Claimant’s nonfrivolous contentions. Without citation to a single case, Claimants argue that granting this motion would violate their confrontation rights under the Sixth Amendment to the United States Constitution, and that the government’s burden of proof for civil forfeiture is unconstitutional. The Sixth Amendment applies only to criminal prosecutions, not civil forfeiture proceedings.
 
 Austin v. United States,
 
 509 U.S. 602, 608 & n. 4, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Additionally, the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit have routinely recited with approval the probable cause burden for the government in civil forfeiture cases.
 
 See, e.g., Ursery,
 
 518 U.S. at 289, 116 S.Ct. 2135 (“[0]nce the Government has shown probable cause that the property is subject to forfeiture, then ‘the burden of proof shall lie upon the claimant.’ ”) (quoting 19
 
 *742
 
 U.S.C. § 1615);
 
 1988 Oldsmobile Cutlass Supreme,
 
 983 F.2d at 674. Claimants also argue that the forfeiture of the subject properties would violate the Eighth Amendment’s prohibition on excessive fines. A civil forfeiture can, in some circumstances, amount to an Eighth amendment violation.
 
 See Austin,
 
 509 U.S. at 602, 113 S.Ct. 2801;
 
 United States v. Bajakajian,
 
 524 U.S. 321, 336, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). However, even assuming without deciding that the forfeiture in this case is punitive, and therefore subject to Eighth Amendment protection, the Court finds that this forfeiture is not grossly disproportional to the gravity of Claimants’ offenses. Claimants contend that this forfeiture would cause them “at least a $90,081 out of pocket loss” of money that was not derived from criminal activity. However, in light of the fact that by the most conservative estimate Claimants are responsible for defrauding the government of $369,314.75, and that the criminal exposure for violations of section 1029 and 1957 includes fines of up to $250,-000, Claimants’ argument is difficult to understand. Therefore, Claimants’ constitutional arguments are without merit.
 

 Claimants alsq contend that they did not violate Title 18 U.S.C. § 1029 because nothing that they did implicated interstate commerce and because their use of the Lonestar cards was with the consent of the food stamp recipients. These contentions are also meritless. Sbini’s fraudulent transactions with the Lonestar cards caused money to be transferred from the Federal Reserve to the Sterling Food Store bank account. This alone is sufficient to satisfy the interstate commerce element of section 1029.
 
 See, e.g., United States v. Scartz,
 
 838 F.2d 876, 879 (6th Cir.1988). Furthermore, section 1029(a)(5) contains no requirement that the accused steal or coerce the usage of the access device. The government has shown, for the purposes of this action, that Sbini’s conduct satisfies every element of a violation of section 1029(a)(5). Sbini knowingly and with fraudulent intent utilized access devices issued to other persons to defraud the United States Government of an amount greater than $1000 within a one year period.
 

 Accordingly, the government is entitled to summary judgment against the right, title, claim and interest of Haisam Muhidin Sbini, Lisa L. Schrank, HSM Inc., and any unknown claimants to the subject properties.
 

 It is therefore ORDERED that the motion for summary judgment of the United States, filed on December 13, 1999, is granted.
 

 [1]
 

 . Plaintiff's motion does not seek summary judgment against the right, title, claim, and interest of PMC Capital, Inc., a lien holder in the above-captioned properties and a claimant in this forfeiture action. Accordingly, nothing in this order and accompanying interlocutory judgment shall be construed to determine the merit of the right, title, claim, or interest of PMC Capital, Inc. to the subject properties.
 

 [2]
 

 . Shreef Sabet Sbini is Haisam Muhidin Sbi-ni’s minor son. Schrank is the named custodian for this account.
 

 [3]
 

 . This figure was arrived at by subpoenaing the records of all of the wholesale food vendors provided by Sbini, and adding a 50% retail markup. This figure gives Claimants the benefit of the doubt since Sbini stated that he only added a 40% retail markup.
 

 [4]
 

 . This figure also gives Claimants the benefit of the doubt, since it assumes that the entire inventory was sold, and it assumes that all of the inventory was sold in food stamp transactions, none in cash.