# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 28, 2011

Lyle W. Cayce
Clerk

No. 11-30295
Summary Calendar

MARTY ROBERTS,

Plaintiff-Appellant

v.

FLORIDA GAS TRANSMISSION COMPANY, L.L.C.,

Defendant-Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
Case No. 3:09-CV-361-JJB-SCR

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges..

PER CURIAM:[*]

Plaintiff-Appellant, Marty Roberts, appeals the district court's grant of summary judgment in favor of Defendant-Appellee, Florida Gas Transmission Co. ("FGT"), on his retaliation claims. As there is no genuine issue of any material fact, we affirm the district court's judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30295

## I.

Roberts worked as a technician for FGT for seventeen years until his termination on August 19, 2008. At a meeting on April 3, 2008, in the employee break room, which included a company vice-president, Tommy Stone, and Roberts' immediate supervisors, John Mire and Kent Arrant, Roberts made complaints about compressors, specifically with regard to engine detonation, and cooling towers.

Following the acquisition of FGT by Southern Union Company in November 2004, FGT has had a living restriction policy which requires that employees provided company vehicles on a full-time basis reside within 45 minutes of their assigned facility. The policy also prohibits employees from using company vehicles for anything other than official business or minimal personal use. When FGT was acquired, Roberts had been assigned a company vehicle, but lived 70 miles from his assigned facility in Zachary, Louisiana, which exceeded the residential restriction. However, Roberts' then supervisor did not enforce the policy as to Roberts alone, because he planned to transfer him to a facility closer to his residence. The transfer never happened. While traveling to the April 3, 2008, meeting, Stone was informed that Roberts was not in compliance with the living restriction policy. Within a week of the April 3 meeting, Roberts was given three options to resolve the issue: accept a pay cut and transfer to a job within 45 minutes of his residence, relinquish the company truck, or relocate to an address within 45 minutes of his assigned location. Roberts chose to relocate to a friend's rental cabin in the woods of Greensburg, Louisiana.

In July 2008, Roberts took sick leave and later had surgery for kidney stones. On July 18, 2008, Arrant went to retrieve the company truck from the residence Roberts provided upon his relocation. Arrant could not locate the residence. When asked, Roberts lied about the location of the truck, stating that

2

it was at his home in Greensburg. Arrant ultimately discovered the vehicle in the driveway of Roberts' wife's home in Mandeville, Louisiana. When Arrant called Roberts to confront him about the car, Roberts inquired about the consequences.

On or about July 21, 2008, Roberts applied for medical leave through "FMLA Source," the company's independent third-party administrator. On July 30, 2008, Roberts was informed that his claim for leave was being denied because his physician did not return a medical certification form.

On August 18, 2008, Stone attempted to contact Roberts to inform him of his termination, but was unable to reach him. On the same day, Roberts made a new request for leave to FMLA Source, attributed to back problems.

On August 19, 2008, Roberts was informed that he was terminated, effective August 18, 2008. Stone explained to Roberts that the decision was based on his deliberate lying, improper use of a company vehicle, and failure to relocate as agreed. Later that day, a physician faxed a medical certification form to FMLA Source.

In May 2009, Roberts filed a complaint in state court against FGT. On June 12, 2009, FGT removed the case to the United States District Court for the Middle District of Louisiana. In his amended complaint, Roberts asserts a Family Medical Leave Act retaliation claim and a Louisiana Environmental Whistleblower Act retaliation claim. On March 25, 2011, the district court granted FGT's Motion for Summary Judgment and dismissed Roberts' claims. This appeal followed.

## II.

### A.

This court reviews a district court's grant of summary judgment *de novo*. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute

No. 11-30295

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing summary judgment, "[w]e construe all facts and inferences in the light most favorable to the nonmoving party[.]" *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation and internal quotation marks omitted).

"In a non-jury case, such as this one, 'a district court has somewhat greater discretion to consider what weight it will accord the evidence.'" *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (quoting *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir.1991)). "When deciding a motion for summary judgment prior to a bench trial, the district court has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* (internal quotation marks and citations omitted).

## B.

Roberts has brought retaliation claims under the Louisiana Environmental Whistleblower Act (LEWA), La. Rev. Stat. Ann. § 30:2027, and the Family Medical Leave Act (FMLA). As Roberts offers only circumstantial evidence of retaliation, the familiar *McDonnell Douglas* burden shifting framework applies to both retaliation claims. *See Gonzales v. J. E. Merit Constructors, Inc.*, No. 00-30584, 2001 WL 803545 (5th Cir. 2001) (applying *McDonnell Douglas* framework to LEWA retaliation claim); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757 (applying *McDonnell Douglas* framework to FMLA retaliation claim). This framework "requires the plaintiff, after making a prima facie case followed by the employer's articulation of a nondiscriminatory reason for its action, to show that the employer's stated reason is a mere pretext." *Smith v. Xerox Corp.*, 602 F.3d 320, 326 (5th Cir. 2010).

To establish a prima facie case of retaliation, the plaintiff must show: (1) he engaged in activity protected by statute; (2) he suffered an adverse employment action; and (3) a

causal connection existed between the protected activity in which he engaged and the adverse action.

The district court determined that Roberts failed to establish a prima facie case of retaliation under the LEWA. "[T]o retaliate within the meaning of § 2027 requires a showing of illicit motivation." *Powers v. Vista Chem. Co.*, 109 F.3d 1089, 1094 (5th Cir. 1997). "Under the L[EWA], an employee's failure to show that his protected actions motivated the employer's termination decision is fatal to his claim." *Gonzales*, 2001 WL 803545 at *3.

Roberts has failed to set forth a prima facie case of retaliation under the LEWA. First, pursuant to the LEWA, an employee is protected if he discloses an employment practice "that the employee reasonably believes is in violation of an environmental law, rule or regulation." La. Rev. Stat. Ann. § 30:2027(A)(1). When Roberts voiced concerns about engine detonation and cooling towers at the April 3 meeting, he did not identify any law, rule, or regulation which had been violated. Although the absence of such a reference is not dispositive, any complaint regarding an employment practice which might have some hypothetical consequence on the environment does not amount to a reasonable belief that the practice is against the law. It is the obligation of a plaintiff to establish that he held such a belief, and Roberts failed to do so.

Additionally, Roberts cannot establish a prima facie case of retaliation under the LEWA because he has not demonstrated a causal connection between the concerns he raised at the April 3 meeting and his termination. Roberts was terminated several months after the meeting. In the intervening period, Roberts was allowed to remain employed with FGT and keep his company vehicle privileges although he had not been in compliance with the living restriction policy. It was only after Roberts failed to comply with his agreement to relocate and lied about the location of a company vehicle that he was terminated. Accordingly, the requisite causal link has not been demonstrated.

Likewise, Roberts cannot establish a prima facie case of retaliation under the FMLA, because he has not demonstrated a causal connection between his protected activity and his termination.    At the time that Roberts first requested FMLA leave through FGT's independent third-party administrator, his failure to comply with FGT's vehicular use policy

had already been discovered. His subsequent FMLA leave request was made to the independent third-party administrator the day before he was terminated, and was not certified by the doctor until after his termination. Roberts has not demonstrated that Stone was even aware of the leave requests. "Obviously, an employer cannot retaliate against an employee for engaging in a protected activity that it did not know about at the time of the challenged action." *Gonzales*, 2001 WL 803545 at *3.

Lastly, even if Roberts could establish a prima facie case of retaliation under both the LEWA and FMLA, his claims would still fail because he has not shown that FGT's legitimate reasons for his termination constitute mere pretext. Roberts lied about the location of the company vehicle, and he has not shown that his lying and failure to comply with company policies were not the true bases for his termination.

## III.

For the foregoing reasons, the district court's judgment is AFFIRMED.