**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 18-30870
Summary Calendar

_____

United States Court of Appeals
Fifth Circuit

**FILED**
April 24, 2019

Lyle W. Cayce
Clerk

ORAY BREAUX, Jr.,

      Plaintiff - Appellant

v.

ROSEMONT REALTY, doing business as Rosemont Property Management,
L.L.C.; SOUTH POINT OPERATING ASSOCIATES, L.P.; JACK STAHL
COMPANY, L.L.C.; CHERYL WILLOUGHBY,

      Defendants - Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MIKE CAMERON,

      Plaintiff - Appellant

v.

ROSEMONT REALTY, doing business as Rosemont Property Management,
L.L.C.; SOUTH POINT OPERATING ASSOCIATES, L.P.; JACK STAHL
COMPANY, L.L.C.; CHERYL WILLOUGHBY,

      Defendants - Appellees

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC Nos. 6:14-CV-2265 and 6:14-CV-2268

_____

No. 18-30870

Before KING, SOUTHWICK, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Two maintenance technicians at an apartment complex filed suit against various corporate entities and individuals regarding their former employment. The district court granted summary judgment to the defendants on the plaintiffs' claims that the defendants violated the federal Age Discrimination in Employment Act, the Louisiana Environmental Whistleblower Act, a state statutory duty to provide a safe workplace, and a claim under state law for damages caused by ruin of a building. Plaintiffs appeal. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Until 2013, Oray Breaux, Jr. and Mike Cameron were maintenance technicians at South Point Apartments in Lafayette, Louisiana. Breaux began working for South Point in 2006 at the age of 49. Cameron began working at South Point in 2012 at the age of 55. After Breaux and Cameron were fired in 2013, they filed separate, but nearly-identical, petitions in Louisiana state court. The cases were removed to federal court and then consolidated. Several of the plaintiffs' claims were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court then granted the defendants' motion for summary judgment, dismissing the claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, the retaliation claims under the Louisiana Environmental Whistleblower Act ("LEWA"), LA. STAT. ANN. § 30:2027, the claims for breach of duty to provide a safe workplace under LA.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30870

STAT. ANN. § 23:13, and the claims for damages caused by ruin of a building under LA. CIV. CODE ANN. art. 2322.  The plaintiffs timely appealed.

DISCUSSION

"We review the grant of a motion for summary judgment de novo, applying the same standard as the district court." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).  Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008).  All facts must be viewed "in the light most favorable to the non-moving party," drawing all reasonable inferences in that party's favor. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

*I.  ADEA  and Louisiana Environmental Whistleblower Act Claims*

Claims made under both the ADEA and the LEWA are analyzed under the *McDonnell Douglas* framework. *See Squires v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (analyzing an ADEA claim under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)); *Roberts v. Fla. Gas Transmission Co.*, 447 F. App'x 599, 601 (5th Cir. 2011) (applying *McDonnell Douglas* to a LEWA claim).  To succeed on either claim, plaintiffs are first required to make out a prima facie case.  If a plaintiff does so, the burden of production shifts to the defendant to "articulate a legitimate, non-discriminatory reason for its decision to terminate him." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005).  If the defendant meets its burden, the burden of persuasion is on the plaintiff to show that the defendant

3

engaged in intentional discrimination or, for purposes of the LEWA, retaliation by, for example, showing the defendant's stated reason was pretextual. *Id.*

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In employment discrimination cases under the ADEA, plaintiffs must prove by direct or circumstantial evidence that age was the "but-for" cause of the alleged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

> To establish a prima facie case of age discrimination, "a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."

*Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).

Plaintiffs argue that summary judgment on their ADEA claim was improper because "there is a genuine issue of material fact as to who employed" the plaintiffs. In analyzing whether the plaintiffs established a prima facie case of age discrimination, we see that Cameron testified that a fellow maintenance technician would on occasion refer to him as "grandpa" or "old man," but that he did not believe that other employees or maintenance technicians were treated better. Breaux testified that Betsy Primeaux, the property manager of South Point, sometimes referred to him as "Papa Hen," but that Breaux never complained to anyone about her comments. Such evidence is of marginal relevance. Fatal to the claim is that the plaintiffs allege on appeal that they were replaced by 25-year-old Andy Trahan. The evidence is undisputed, though, that Trahan was hired before either plaintiff was

terminated.  No evidence supports that Trahan replaced either plaintiff.  It is true that Breaux alleged in his complaint and in his deposition that he was replaced by Bryan Koateska, and only on appeal alleges he was replaced by Trahan.  Because Breaux testified during his deposition that Koateska was hired while he was still employed, that claim, if not abandoned, fails too.

We next address the Louisiana statute.  It prohibits retaliation "against an employee, acting in good faith, who," among other things,

> Discloses, or threatens to disclose, to a supervisor or to a public body an activity, policy, practice of the employer, or another employer with whom there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule, or regulation.

LA. STAT. ANN. § 30:2027(A)(1).

The plaintiffs' claims are based on their alleged reporting of environmental violations related to air conditioning units and the presence of mold in some apartments.  As the district court correctly concluded, the plaintiffs failed to make out a prima facie case for violations of this statute because there was "insufficient evidence to establish a causal connection between the Plaintiffs' protected activity and their termination."

Further, even had the plaintiffs established a prima facie case under the ADEA or the LEWA, the defendants have articulated legitimate, non-discriminatory reasons for both terminations that the plaintiffs have not rebutted as pretextual.

In particular, Cameron was frequently absent from work — including on the three days preceding his termination.  He at times refused to respond to after-hours calls, even when he was on call.  He once refused to correct one of his earlier, inadequate repairs, leaving the work to others.  Further, Cameron had informed his employer on multiple occasions that he had completed all

repairs necessary to make apartments ready for new tenants, only to have his supervisors discover still more repairs were necessary.

On July 19, 2013 Breaux received a disciplinary action report from Primeaux which stated the following about Breaux's work:

> (1) Not following instructions and proper work schedule given by superior; (2) Withholding important information regarding the well-being of the property; (3) Not cooperating and getting along with co-workers; (4) Using work time to discuss useless non-work related and personal issues; (5) Insubordination; (6) Quality of work; (7) Quantity of work.

Breaux expressed his disagreement with every claim in the report in a letter sent to the complex's property administrator, Cam Peron. There, Breaux accused Primeaux of "borderline stupidity." Breaux was terminated the day he sent this letter to Peron.

Neither plaintiff has shown that the absenteeism on the part of Cameron and insubordination on the part of Breaux that were the bases for their terminations were pretextual.

## II. *Duty to Provide a Safe Workplace and Ruin of a Building Claims*

Plaintiffs allege that defendants failed to provide a safe workplace, claiming exposure to mold during their employment. Their claim is that the following statute was violated:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees.

LA. STAT. ANN. § 23:13.

No. 18-30870

Plaintiffs also claim under Louisiana law that the "owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction." LA. CIV. CODE ANN. art. 2322. That general statute does not apply if the plaintiffs' claims are against their employer and are subject to the Louisiana Workers' Compensation Act. That Act provides the exclusive remedy for claims by an employee who is injured by a defective building owned or operated by the employer. *See* LA. STAT. ANN. § 23:1032.

The district court found the plaintiffs' claimed injuries to be occupational diseases because they "were hired as maintenance technicians, whose primary job duties included servicing and repairing HVAC systems." *See* LA. STAT. ANN. § 23:1031.1(B). The district court also found that as "maintenance technicians, both Cameron and Breaux encountered mold as a routine matter when cleaning the AC units, responding to work orders, and preparing apartments for new tenants." For workers' compensation purposes, "an occupational disease is one in which there is a demonstrated causal link between the particular disease or illness and the occupation." *Arrant v. Graphic Packaging Int'l, Inc.*, 169 So. 3d 296, 309 (La. 2015).

The district did not err in its legal analysis of these two Louisiana statutes or in the fact-finding undergirding that analysis.

AFFIRMED.

7